May it please the Court. Dan Dickerson here on behalf of Mr. Tchir. Your Honors, this case was filed in the State of Oregon, was removed to the jurisdiction of the District Court in the guise of a federal question. The defendant filed a motion for summary judgment that was granted by Judge Anna Brown on or about October 24th. In her order, Judge Brown granted the defendant's motion on all claims, including his underlying pendent claim that was before her for the retaliatory firing under state law. Of specific interest today is the fact that Judge Brown, explicitly in her order on page 12, found that the plaintiff had proven a prima facie case. This is of interest today because the judge depended on the Sneed case in order to justify that determination and in order to justify her application of the McDonnell-Douglas. The McDonnell-Douglas burden shifting facts that allowed the plaintiff to assert a improper reason for a discriminatory action. The defendant is then allowed to prove that there was a proper reason for the action, thus shifting the burden back upon the defendant in order to prove specific and substantial evidence that there was an improper motive. Do you agree the only issue in this case is whether the pretext is really contextual or not? All the rest has really been decided. The other two claims, Your Honor, yes, I do agree. The issue before, the issue that we are arguing here today is whether or not the court should have proceeded with the McDonnell-Douglas application in light that the Sneed doctrine is restricted by its own terms to cases which are before the court under the guise of a, under the guise of jurisdiction, which is based on, not on a question of law, but instead is based on disparity of the location of plaintiff and defendant. Before the court, and the plaintiff was also arguing, there was evidence that was presented during the summary judgment proceedings that the court did not acknowledge in their order and certain evidence that was taken into consideration that, contrary to case law, was beneficial to the defendant's positions that were being offered. We had presented evidence of e-mails that discussed the plaintiff's choice of physicians with redacted names, which we believe reference additional employee and another employee who had also filed multiple claims. Your Honor, if you could be more precise, what specific evidence is in the record that supports your belief that it was pretextual? Your Honor, we have specific e-mails that discuss my client's choice of physician in treating his ailment, which he was claiming, which was the foundation of his workers' comp claim. Wasn't that just described as only a suspicion? Well, Your Honor, we have case law in the state of Oregon that presents, that allows the presentation of circumstantial evidence to support the claim. The plaintiff's argument here today is that that circumstantial evidence was avoided, and what has happened is the defendant has been allowed to forum shop by moving this into federal court, thus adding an additional requirement to a state claim, making the defendant, instead of moving forward on the showing of a prima facie case as is allowed under Oregon law, to satisfy all three requirements of the McDonnell-Douglas test. But you're here, so we have to do it under whatever the federal law is. Right, Your Honor, and that I understand. It would be our argument that at the point when the court is taking into consideration a state law claim, and in light of the Snead holding that the McDonnell-Douglas test applies when there is a diversity case before it, the basis of Snead, in my reading of the case, and the plaintiff is arguing, is that Snead is made to level out a playing field, not to change the substantive law that is being applied. We have a state law claim. It was never a federal claim, and what's been allowed to happen is defendants are now allowed to move these cases under the guise of a federal question or under the guise of diversity, and the two situations that we're arguing is that that situation is different. Diversity is the basis and the justification for the Snead holding, allowing substantive law to be applied, but procedural law in that case to apply, the federal procedural law, due to the fact that there is diversity of jurisdiction. This case was moved into federal jurisdiction solely on the basis of an underlying federal question. That federal question was then dismissed, leaving merely a state claim there, a pendant claim, that was nothing more than riding on the back of the defendant's assertion, defendant's movement into the federal court. Once the guise of that federal question or any allegation of diversity of jurisdiction exists, it's our position that the Snead case does not apply and should not prevent the court from making this analysis on the basis of a state law claim solely based on Oregon state law. I'd like to get to the evidence that you cited, the reference to the doctor. As I look at the email in question, it indicates that your client left a message. This is an email from Julie Cassidy to Kathy Lucas on Monday, April 30th. It's at ER037, I believe. She sent the no-call, no-show letter on Friday. On Sunday, he called and left a message, said he'd got a doctor slip from a zoo doctor who happens to be so-and-so. That suggests that she sent the letter two days before requiring the information as to who the doctor was, and if that's the case, then you can't prove pretext on that because she didn't even know on Friday when she sent the letter who the doctor was. In the plaintiff's affidavit, you'll find that he asserts that what happened is he reported a message via telephone. The initial letter was that he had failed to report whatsoever. He had left a message. He had contacted, thus contradicting the defendant's statement. He had made contact with his employer, although it was via a message left on a telephone. She later finds out that we also have another email whereby she's instructing another employee of the defendant's, not the contact defendant's. I'm trying to get to the specific evidence of pretext. When you were asked that question, at least the first piece of evidence you referenced was that, well, see, they're acting because they know who his doctor is. They don't like him. And I say, but to look at the document, it suggests the letter was sent to him before they knew who the doctor was. Now, you're launching off on a long explanation, but so far I haven't heard anything that tells me how this could be evidence of pretext because they knew who this doctor was before the letter was sent. Is there any evidence that suggests they knew who the doctor was before the letter was sent? Your Honor, there is not specific evidence that they knew who the doctor was. And there's not evidence of pretext based on that, is there? Well, Your Honor, I think in light of all the circumstantial evidence presented, there is sufficient evidence. If you want to identify other, the question you were asked by Judge Rhodes, what evidence of pretext? You offered one piece of evidence. I've suggested that that doesn't do it. If you want to offer other evidence, please do. But focus on the question, because I think that's the question that you've got to deal with. What's the evidence that this is a pretext? Your Honor, I think then I will proceed to offer or to enlighten the Court on the other evidence that was offered in the record. And in light of all of the circumstances, what the plaintiff is arguing is that in light of all of these circumstances, a reasonable juror under Oregon State law could find that the offered reasons for termination were no more than pretext. But the evidence has to be specific, according to Ninth Circuit law. And we're asking you, what specific evidence is there? Well, Your Honor, I will go through a list of evidence, and then we'll field questions. But my assertion is that under Federal law, this case should have been considered from that point forward without the application of the McDonnell-Douglas factors. Well, then through that, just answer the question we're asking you. What specific evidence? Okay, Your Honor. There's also internal documents that show that Ms. Cassidy's letter said my client had until the 7th to reply in order to avoid termination. My client sent a letter. It was uncontested that that letter was received. Prior to the 7th, which was the cutoff date for making contact, Ms. Cassidy on the 4th sent – No, let's be specific. Her letter, which is 034. Please contact me to set up an appointment to discuss this matter as soon as possible. If I do not hear from you before May 7, 2001, the company will consider that you have voluntarily quit. He responds partially. He responds so she has heard from him, but he does not contact her to set up an appointment. Well, they don't treat him as a voluntary quit. They treat him as a termination. And what is alleged to be a pretext, a termination for failing to respond to the instruction he was given, which is set up an appointment to discuss this matter, which he not only does not do in his letter, but his letter pretty clearly implies he has no intention of doing. He doesn't plan to talk to them about it. He's staked out his position and he's sticking to it. Where's the pretext? Your Honor, the pretext also lies when considering the lie of the other evidence. As a standard practice, as a union. So far you've answered twice by offering a piece of evidence, we ask a question, and you move to other evidence. So I understand you're trying to say this whole assemblage, but when we start looking at it one at a time, each time it seems to fall short somehow. Yes, Your Honor, it does. But if we can go back to the initial injury that my client sustained, during that period of time he didn't call in on a daily basis. He called in and reported he was going to be unavailable to work for a several-day period. This company has in place a progressive disciplinary policy that's on the record and it's admitted in deposition testimony. My client was never warned that his failure to comply with calling in on a daily basis was going to subject him to discipline. He never received a verbal warning. He never received a written warning. And all of these things had been, they had been complied with in the past for other violations of company policy. My client was simply, he received a letter. He contacted his union in order to facilitate a grievance process to schedule a meeting. That's the formal procedure that's to be followed. That letter was sent. That was testified to by his union representative. That letter was received prior to the termination letter. And there is no testimony to that effect, Your Honor. The only testimony that we could get from the union representative is that the letter was sent. My client initiated the procedure. His letter was received and he had attempted to initiate union contact to put in place the grievance process as is required by his contract. All of the allegations presented by the defendant is that he failed to comply with the terms of the contract. But, in fact, he made every effort by initiating the union contact. He made every effort by contacting Ms. Cassidy. He relied on his union contract. There was a progressive disciplinary policy, which he was not afforded the benefit of. All of these things he relied upon. Well, it's hard to rely upon the union contract because he did have the separate grievance procedure and he's had his remedy there. And we've been told how it comes out. That's not really our concern. But those are his rights over there with regard to the action taken in response to the April 27 letter. The perspective of the company has offered to us is that the company had not heard from the union representative by the time the May 7 letter was sent out. And he had not responded to the request specifically put to him in the April 27 letter. Face value. What tells us that's pretext? Well, face value, Your Honor, I think that a reasonable juror could conclude that that letter which he sent to Ms. Cassidy was, in fact, a contact. And it was, in fact, to schedule the meeting and his other actions coupled with that by contacting his union representative. I believe a reasonable juror could conclude that that does create a factual issue as to whether or not he complied with that letter. Under the McDonnell Douglas test, I think that the problem under Oregon law is it's requiring the federal court to make a determination as to the sufficiency of a factual issue instead of to the existence of a fact which may allow a reasonable juror under Oregon law to make that determination. A prima facie case was proven and that has not even been appealed by the defendants in this by the defendant in this case. Judge Brown found that the prima facie case did exist. And then her analysis switched to Snead and thus the application of the McDonnell Douglas factors, which I believe was incorrect. I believe that those factors are applicable as stated and as limited by the language of that case, which states that it's applicable to diversity cases and diversity. It doesn't go as far as a diversity cases only. But that's what is addressed by that case. And that is no longer the application or that is not the correct application. Then the correct application would be back to Oregon state law, at which point my client is faced with the burden of proving it, proving a prima facie case. And that fact has not even been contested in this appeal. I want to be unsure. I understand you're saying that the the reason for diversity, the reason that was removed, that claim was eliminated somehow. This claim was not ever presented on diversity issues. This was brought before the court on a claim of a federal question. Well, I thought you're arguing that the diversity claim or the claim that the basis for diversity was gone. And therefore, the Snead case doesn't apply. And therefore, we should apply Oregon law and not apply McDonnell. Isn't that the argument? Let me see if I can clarify. I'm saying that due to the fact that this is not or nor was it ever a diversity case, that the Snead case should not have been applied. That state law should have been applied from the beginning, from the from the finding of a prima facie case, that the Snead factor, the Snead should not have been put in place and that the McDonnell Douglas factor should not have been used. But instead, the state law factors, as presented under Oregon law, should have allowed this case to continue on the basis that a prima facie, prima facie case was proven. I don't understand when you say this was never a diversity case. What do you mean by that? This case was filed in state court. This case was removed to jurisdiction of the district court because of diversity. No, Your Honor, based on a federal question based on a breach of contract claim that was contained in the original complaint, which was dismissed and is not a part of this appeal. OK, so when they dismissed that claim. And you're saying under that claim, that claim was gone. Therefore, we're supposed to decide the case under state law, not federal law. Right. But there is no other pendent jurisdiction on this court. And I'm just saying that from that point forward, the Snead case specifically states that it's applicable to diversity cases. Seeing as this case was never a diversity case, then my argument is that state law should have applied. Otherwise, the defendant is allowed to remove a case into federal jurisdiction forum shop and thus present an additional factor, which a plaintiff must prove to survive summary judgment above and beyond that state law claims prima facie case, which would allow it to be maintained in state court. The underlying substantive law is Oregon law. No question about that. The question becomes whether the procedural standards to be applied will be state or federal. Are there cases in where the state procedure is applied? Your Honor, I would argue that there are. The court has recognized several cases, especially recently. The Stigall case, the Cishan case, McGinnis case was actually a Ninth Circuit case where it says very little evidence is necessary to raise an issue of genuine fact regarding an employee's motive and employer's motive. Now, a lot of these cases which have come down subsequent to this decision, I think that this court has recognized a reduced factor based a reduced burden of proof based on state claims that are proceeding. Let me clarify a question because you gave a fair answer, but I'm not sure it really spoke to what concerns me. You're really trying to argue that federal summary judgment standard employed here via the McDonnell Douglas burden shifting procedure is inapplicable to this case. I know that the cases that you've referred to that I understand really aren't saying that process doesn't apply. They're saying the standard with regard to this issue is very low. It doesn't take much to survive summary judgment. But is there anything that says you don't use the burden shifting process, the back and forth process? I think, Your Honor, that what I'm asserting is that the SNEED process is limited by the holding of that court. It made it very clear that it's the basis of that. It's not limited. It is a diversity case. I'll concede to you that. But the logic employed is that, look, in the end, the result is going to be the same. And federal courts are too busy to put up with a process that sends cases to trial that won't reach a different result. So we're not going to do that. And the rationale of that seems to be exactly applicable here as it was in SNEED. How is this not being a diversity case change the logic of the decision? Because I think the logic, Your Honor, has created a backdoor for form chopping by a defendant. A defendant moves a case into federal court, and thus we've got a two-step. What SNEED is premised on is that the ultimate result is any different. And we don't have the time to take to send cases to trial that are going to get the same result anyway. So we're not going to do that. Sure, anybody who thinks they can defend a case more efficiently and cheaply will do it through a system that lets them do it more quickly and cheaply. But that doesn't say the substantive result should be any different. But, Your Honor, I believe it does when the court has found a prima facie case in this case. If this case was determined on substantive law and procedure law on the basis of the Oregon state claim, then the prima facie case would have been the end of the argument. There wouldn't have been an additional step imposed by McDonnell Douglas. And if it never got to the SNEED evaluation, because it is not a diversity case, we would have never gotten to McDonnell Douglas, thus never imposed an additional layer of burden upon the defendant to move forward on a state law claim, which is in front of the district court due to defendant's own motion. Your Honor, I'm going to reserve a few minutes, if I may, for rebuttal. Thank you. Thank you. Good morning. May it please the Court, Paul Buchanan for Defendant Pele, Unified Western Grocers. I listened to the arguments in these other cases this morning, and they all struck me as complex compared to this one. This case really is quite straightforward. I don't think there's any real dispute here that the rule that resulted in Mr. Teer being terminated was that you had to call in, or if you didn't call in and you didn't show up for two days in a row, you were subject to termination. That's the rule that's in the collective bargaining agreement that governed this employment relationship, and that's the rule that was in these transitional duty room guidelines that the plaintiff testified in deposition. He had only recently received, actually taken home and read with his wife at home, and he marked it up and looked at it carefully. The collective bargaining agreement says in Section 5.5, and this is in Supplemental Excerpt of Record 114, any employee temporarily absent from work for any reason other than vacation, approved leave of absence, or hospitalization when the employee is unable to communicate must report his status daily by telephone to his supervisor. Failure to report for two scheduled work days shall be deemed a voluntary quit. And then in 5.2, the collective bargaining agreement says employees lose all previous seniority and their employment relationship shall be terminated only if they quit or retire, are discharged for just cause, or are absent for two or more consecutive days without notifying the company of such absence. One of the things that counsel has indicated is that there's a progressive discipline policy. That governs when you have a termination for just cause, which is a separate provision of the collective bargaining agreement. Here we're talking about a termination under 5.2C, where you're absent for two or more consecutive days, or under 5.5, where it's a voluntary quit. Let's look at C. Are absent for two or more consecutive days without notifying the company of such absence. Certainly notify the company of such absence. Well, that's correct. You have to look at 5.5, and you also look at, in this case, because he was in the transitional duty room, you look at the transitional duty room. Those two places spell out more specifically that you must report your status daily by telephone to your supervisor when you're in that situation. In the transitional duty room guidelines, that's very expressly stated as well. Plaintiffs understood this, and I think that's really the ultimate critical fact, is that there is no dispute between these two parties that the applicable rule was you've got to call in daily to your supervisor, and if you don't do that on a daily basis, almost no matter what the reason, your employment terminates. I asked the plaintiff in his deposition, and this is Supplemental Excerpt of Record 53 through 55, I asked him, so you knew as of the time that you started working in the transitional duty area that you had an obligation to call in daily if you were unable to report to the transitional duty room, correct? Answer, yes. Question, and you also knew, as indicated in Exhibit 6, which was the transitional duty room guidelines, that, quote, failure to comply with the transitional duty policy guidelines will subject the employee to disciplinary action up to and including termination, correct? And plaintiff answered, yes. And then later, at page 184 of his deposition, so you knew that failing to call into your supervisor for two days in a row, even if you were sick, shall be deemed a voluntary quit under the collective bargaining agreement. Answer, yes. So there's no dispute here between Mr. Cheer, who worked at this company long enough to know these things, and the company that you've got to call in on a daily basis. And what he says is, on April 25th and April 26th, his testimony in deposition was that he forgot. That's his rationale. Now, he was given, as the court has already noted, he was given an opportunity to explain that to Julie Cassidy, the director of human resources, in her April 27th letter. What she testified, and it's undisputed, is that had he set up an appointment with her, had he given her some explanation for his failure to call in and his failure to show, and he did a previous instance in the same leave where he failed to follow these transitional duty room guidelines, so she had reason to be concerned now. She said, had he just called me and presented me with a doctor's note and said, here's what was going on, here's why I wasn't here, she likely would not have terminated his employment. But he didn't do that, as the court has seen. He sent kind of a terse defensive letter that said, I followed the company's policies. He didn't seek to set up an appointment. He contacted his union representative. The union representative testified that he didn't seek to set up any appointment. He prepared a grievance about the suspension, which was dated May 5th, and the union representative, which was Friday, testified when it was sent, I don't know. Julie Cassidy testified, and it's undisputed, that on May 7th, when she sent out the termination notice, she had received nothing from the union. She had not received the grievance, and she certainly hadn't received anything, setting up an appointment for Mr. Teer to explain why he hadn't been there. What's your response to this argument that Snead doesn't apply because diversity no longer exists, because you made a motion to get rid of the basis for the diversity? Well, several things, Your Honor. First of all, that's a bit of a new argument for me. I don't think that was in the briefs, but I am prepared to address it. I believe, and I apologize for not knowing this off the top of my head, I believe that this case was removed on two grounds, both diversity and federal question. I'd have to go back and look at the record to determine whether that's true, but I ultimately don't think it matters very much. This court obviously is applying Rule 56, the summary judgment rule, under the Federal Rules of Civil Procedure, to this case that's before you, and you have a standard for whether there's a genuine issue of material fact on the issue of whether an unlawful motive in this case was the cause of plaintiff's termination. But plaintiff, regardless of how you slice it, plaintiff has to come up with some evidence that's sufficient to create a genuine issue of material fact as it's viewed in federal court under Rule 56, and they have not done that under any standard. But the fact that he's talking about it is a pretext. He says you don't even have to get to that under state rules. I don't think that's clear under state law. I also don't believe that Judge Brown said that plaintiff had made out a prima facie case. I think what Judge Brown did actually was apply Hardy v. Legacy Health Systems, which is a state law case, which says that there is a but-for standard that a plaintiff asserting a workers' compensation discrimination case must make out. They must be able to show that they would not have been terminated but for having filed a workers' compensation claim. And in the Legacy case, that court found that there was sufficient evidence to create a genuine issue of material fact. But-for test is kind of the same as pretext test, right? Well, indeed, Your Honor. I believe that's correct. I mean, there really isn't a difference here. And Snead ultimately says in that diversity context, as the court already pointed out, that this whole issue is not outcome determinative and that there isn't ultimately a substantive difference. There may be some procedural difference. But here I think it's clear you're not applying Oregon State's summary judgment statute. You're applying the federal statute. So the question of whether there's sufficient evidence, I think, ends up being the same. Ultimately, the elements of a claim here are that the plaintiff has to show that he filed a workers' compensation claim. True enough, he did. He suffered an adverse employment action. True enough, he did. But the critical issue here is whether he has come forward with sufficient evidence to show that the reason he suffered the adverse employment action was not that he failed to call in and failed to show for two days in a row, but because he filed a workers' compensation claim. And there's no evidence in this record that that is the case. In fact, I think one of the most powerful pieces of evidence in this record is contained in Julie Cassidy's affidavit where she lists, and it's entirely undisputed, she lists other people who have failed to call in and failed to show for two days. And she lists specifically the days who were involuntarily terminated. Most of those people, and it's set forth in the affidavit, did not file a workers' compensation claim. So is it a sort of harsh draconian rule in some workplaces? Yeah, maybe. Maybe so. But this is a rule that was bargained for between the Teamsters and the company, and it's a rule that the undisputed evidence in the record is uniformly applied to people who failed to call in and failed to show. Here, as I mentioned before, the plaintiff had an opportunity to get himself out of it, and he didn't do so. I do think – Yes, what's hard for me here is that you're dealing with, on either side, inferences that aren't real strong. You're really attacking the first part, whether there's a prima facie case, in effect, by saying you can't make the link to the work comp claim. And using the McDonnell Douglas test, the district court said, well, there's a prima facie case, and it wasn't until later that it really winds back at the same issue, because the link doesn't seem particularly strong to the work comp claim. And yet on the other side, as they're talking about pretext, it wasn't that he didn't respond at all. He responded in a half-hearted or a misguided fashion. But I look, for example, at the letter she sends, and she says, if you don't contact me by May 7th, we'll consider you voluntarily quit. And he does respond. It's not like he stonewalls. If he stonewalls, he doesn't respond at all. You've got a much stronger position. But he does respond, albeit in a way that's at best misguided. So I'm sitting here taking a step back. If somebody had a powerful inference of discriminatory action on the front end, the fact that he's tripped up by not responding literally to her letter probably isn't going to survive. The pretext is not going to be so hard to infer. But here it's kind of, eh, here and half-hearted there, too. And what is it that causes us to say this is a case the court should take itself and decide right now as a matter of summary judgment? There's no tribal issue with that. Well, I think there's a few things there, Your Honor. One is what that letter, I believe, says expressly, is that Ms. Cassidy is conducting an investigation to try to determine why he failed to call and failed to show on those two days. And she's seeking to set up an appointment with him so that she can find out his side of the story. As of May 7th, which is the deadline that she provides, she doesn't know. And, in fact, in the record, it's clear that she doesn't ever come to know. He never comes forward with any kind of doctor's note. And we know, in fact, that he didn't have a doctor's note. A year later in the course of this litigation, he went back and got a doctor's note to say that he had some condition on those days. But from Julie Cassidy's standpoint, as she tells him, conducting an investigation and trying to figure out what's going on, she never finds out. I also think it is significant in this case that plaintiffs expressly conceded that defendant had cause to terminate. And I think that, and that's in the, it's most clearly stated in the transcript of the oral argument below at page 11 and 12 of the actual transcript, in which Mr. Dickerson confirms for plaintiffs that there was a basis for the employer to discharge your client for cause. Mr. Dickerson conceded that that concession had been made. But this gets us to the issue, well, there's a reason. Is the reason contextual? I think where you couple the fact that there is a reason that even plaintiff concedes is for cause, and which we've seen as a result of his grievance, was consistent with the collective bargaining agreement. And then when the only other evidence in the record is that everybody else who's ever violated this rule got fired, workers' comp claim or no, I think you put those two undisputed facts together, and there's just no basis upon which to found an inference that there was a retaliatory motive here. And I think, you know, if there were a contrary ruling, the effect, practically speaking, on an employer is they could not enforce their rules with somebody who had filed a workers' compensation claim without necessarily having an issue of fact and having to have a jury trial as to whether or not the fact that this person had filed a workers' comp claim was the reason that they were doing what they did. Where it's uniformly established, as it is here, that every time the rule was violated, the person got fired, it shouldn't be the case, in the absence of some other evidence, that just because somebody has filed a workers' compensation claim, now that rule can't be enforced without a full-blown jury trial to determine whether or not conceivably the workers' comp claim could have had something to do with the termination. There's got to be some other evidence, I think, to create a genuine issue of fact that a jury would need to decide. How much are you relying on Local Rule 56.1 that the trial judge didn't seem to rely on it much at all, if he did? Well, I don't think it's at all necessary for our position and to affirm the court below. As you say, the court made a bigger deal out of that, I believe, in the oral argument at page 5, line 15, where she talked about the failure to file the concise statement results in the facts being deemed admitted. And then in the decision, I think, as you're observing, perhaps, the court, as the court recites them, the court says that these facts are either deemed admitted or not in dispute. Well, would you agree whether he did it precisely as required by 56.1 or somehow brought these facts, which he's arguing this morning, to the attention of the trial court, that he did contest it? Well, I think one has to look at his concise statement in response. And I do think that when one takes those two concise statements side by side and looks at them, there are any number of things. A lot of the most important facts in the defendant's concise statement are really not effectively contested at all in the concise statement in response. Well, it's not in response. It's his own concise statement. So I think that failure to follow the local rule there and specifically respond to the defendant's concise statements does result in at least some of those facts in defendant's statements being, under a literal application of that local rule, deemed admitted. And I do think that Judge Brown did certainly take note of the fact that many of these key facts were deemed admitted because they were neither expressly responded to nor contested in some other way. I don't think it's critical, but I think it does strengthen the defendant's case, as does the concession that the termination here was for cause. I have nothing further unless there are other questions from the Court. Thank you. Thank you. Rebuttal. Thank you, Your Honors. Please, the Court. This case, I agree, is straightforward. The Reeves case says that I can present evidence that is either circumstantial or evidence that is circumstantial and that is sufficient to survive a motion for summary judgment. That case also states that all the lovely evidence presented by a defendant regarding Ms. Cassidy's deposition, her affidavit, so on and so forth, all that information should be disregarded. None of that information should have been considered in making the court's determination, doing the evidence in light most favorable to my client, that issues of fact existed. Further, on page 12. Why should that evidence be disregarded? In particular, you referred to the evidence that other people that had violated the call-in rule were terminated. Why should that be disregarded? Your Honor, any evidence presented by a defense witness or presented contradicting my client's testimony should be disregarded if the court is going to be viewing the evidence in the light most favorable to my client. The rules view the evidence in the light most favorable. The rule does not disregard the evidence that's not favorable. If there is evidence in front of the court, why can't the court consider that evidence? Evidence, Your Honor, that contradicts the assertion that if a defendant if I can present evidence via only an affidavit and no other evidence for my client to contest their allegations, the court does not find that sufficient if I was providing my motion. If the defendant is allowed then to provide evidence via affidavit and that affidavit bases the court's weighing of the evidence, the balancing thereof between those two assertions, it only makes sense that under the general guise of motion for summary judgment rules that that testimony should be disregarded. Anything further? Your Honor, I would just point the court to page 11 of the reply brief and the litany of cases there which delineate the burden of proof necessary in Oregon law and also as well to the cases I mentioned earlier that have come down since the briefs were filed in this manner. We thank you. We thank both counsel for the argument. The case just argued is submitted.
judges: Goodwin, Clifton, Rhoades